IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TAMAR MESHA WILLIAMS                                                                         PLAINTIFF

vs.                                          Civil No. 4:07-cv-04064

MICHAEL J. ASTRUE                                                                            DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Tamar Mesha Williams ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. No. 2).[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff filed an application for DIB on August 11, 2005. (Tr. 40-42). In this application and in the supporting documents filed with the SSA, Plaintiff alleged she was disabled due to lower back pain and depression/anxiety. (Tr. 58-74). Plaintiff alleged on onset date of July 16, 2005. (Tr.

---

[1] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

1

40). Plaintiff alleged that, on that date, she injured her back while she was lifting a patient.[2] (Tr. 133). Plaintiff stated that she had not worked since July 15, 2005 because of her back injury. *See id.* This application was initially denied on October 5, 2005 and was denied again on reconsideration on December 15, 2005. (Tr. 30-31).

On December 27, 2005, Plaintiff requested an administrative hearing on her application. (Tr. 28). The hearing was held on October 31, 2006 in Texarkana, Arkansas. (Tr. 127-148). Plaintiff was present and was represented by counsel, Charles Barnette, at this hearing. *See id.* Plaintiff and Vocational Expert ("VE") Katrina Virden testified at this hearing. *See id.* On the date of this hearing, Plaintiff was thirty-nine (39) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c), had a high school education, and had completed a three-month Certified Nursing Assistant ("CNA") course of training. (Tr. 130).

On March 29, 2007, the ALJ entered an unfavorable decision denying Plaintiff's request for DIB. (Tr. 11-16). In this decision, the ALJ determined Plaintiff met the insured status requirements of the Act through December 31, 2010. (Tr. 13, Finding 1). The ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since July 16, 2005, her alleged onset date. (Tr. 13, Finding 2). The ALJ determined Plaintiff had the following severe impairments: lower back problems and depression. (Tr. 13, Finding 3). The ALJ also determined, however, that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 13, Finding 4).

---

[2] Despite this report, Plaintiff evidently had lower back pain prior to July 16, 2005. During her appointment with Dr. Dehaan on July 27, 2005 (only eleven days after her accident), Dr. Dehaan reported the following: "She's [Plaintiff's] been having low back and lower extremity problems for quite some time now. They seem to be getting worse over the past *6 weeks* or so." (Tr. 91) (emphasis added).

In this decision, the ALJ also evaluated Plaintiff's subjective complaints and determined her Residual Functional Capacity ("RFC"). (Tr. 13-15, Finding 5). Plaintiff claimed she "can't bend. . . . stand long. . . . sit long." (Tr. 134). Plaintiff claimed her back pain radiated to her hips and to both of her legs. *See id.* Plaintiff testified at the administrative hearing that she was only able to do the following: sit between fifteen to twenty minutes at a time, sit for about four hours in an eight-hour period of time, stand between five to ten minutes at a time, stand for two hours in an eight-hour period of time, walk about twenty-five feet before she had to sit down, lift no more than ten pounds, and could not stoop or bend. (Tr. 138-139). Plaintiff also alleged she suffered from depression and had bouts where she "couldn't stop crying," "just felt like nobody loved me," was "just weary that . . . [she] wasn't able to go to work," and was "worried about . . . [her] kids." (Tr. 134). Plaintiff reported that she had overdosed in the past and was required to go to a "mental health place for a little while." (Tr. 134-135). Plaintiff testified she had been having problems "hearing voices." (Tr. 137). Finally, Plaintiff reported she had severe headaches and was having trouble sleeping at night. (Tr. 135).

The ALJ evaluated Plaintiff's subjective complaints and allegedly disabling symptoms pursuant to the requirements and factors of *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984). (Tr. 14-15). After reviewing these factors, the ALJ discounted Plaintiff's subjective complaints of disabling pain and other symptoms, based upon several findings, including the following: (1) Plaintiff's complaints of lumbar spine and hip pain were supported more by her subjective complaints than the objective evidence in the record; (2) Plaintiff's alleged pain was not fully supported by the objective medical evidence, including her X-ray and MRI results; and (3) Plaintiff had been taking pain medication for ten months with no side effects reported, despite her complaints

of disabling pain. (Tr. 14).

After discounting Plaintiff's subjective complaints, the ALJ then reviewed all the medical evidence and the hearing testimony and determined Plaintiff's RFC. (Tr. 13-15, Finding 5). Specifically, the ALJ determined Plaintiff retained the RFC for a wide range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift up to 20 pounds at a time, lift/carry frequently up to 10 pounds, sit 6 hours of an 8 hour workday, stand/walk 6 hours of an 8 hour workday and push/pull unlimited except as shown for lift/carry. The residual functional capacity is based on the evidence of record and testimony at the hearing.

(Tr. 13-14, Finding 5). *See* 20 C.F.R. § 416.967(b).

The ALJ then determined that Plaintiff was unable to perform her Past Relevant Work ("PRW") but was able to perform work existing in significant numbers in the national economy. (Tr. 15-16, Findings 6, 10). Plaintiff and the VE testified at the administrative hearing regarding these issues. (Tr. 130-133, 143-144). Plaintiff and the VE testified that Plaintiff's PRW included work as a Certified Nursing Assistant for fifteen years (medium, semiskilled work) and Housekeeper-Hospital (medium, unskilled work). (Tr. 130-133, 143-144). The VE testified that a hypothetical person with Plaintiff's RFC could not return to any of Plaintiff's PRW. (Tr. 143-144).

However, the VE then testified that a hypothetical person with Plaintiff's RFC, age, education, and work experience could perform other work in the national economy. (Tr. 144-145). For example, the VE testified that such a hypothetical person could perform work as a security guard (light, semiskilled work) (5,000 such jobs in the State of Arkansas and 327,000 in the nation), housekeeper (light, unskilled work) (4,600 such jobs in the State of Arkansas and 259,000 in the nation), and cafeteria attendant (light, unskilled work) (1,300 such jobs in the State of Arkansas and 104,000 in the nation). (Tr. 16). The ALJ then determined, based upon the VE's testimony and

4

based upon Plaintiff's age, education, work experience, and RFC, that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (Tr. 15, finding 10).

On April 2, 2007, Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision. (Tr. 6). On June 29, 2007, the Appeals Council declined to review this decision. (Tr. 3-5). *See* 20 C.F.R. § 404.984(b)(2). On July 17, 2007, Plaintiff appealed the ALJ's decision to this Court. (Doc. No. 1). The parties consented to the jurisdiction of this Court on July 26, 2007. (Doc. No. 2). This case is now ready for decision.

## 2. Applicable Law:

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one

year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

### 3. **Discussion:**

Plaintiff brings the present appeal, claiming the following: (A) the ALJ's RFC determination is not supported by substantial evidence in the record; (B) the ALJ's determination that Plaintiff,

with her limitations, can perform other work existing in significant numbers in the national economy is not supported by substantial evidence in the record; and (C) the ALJ's disability determination is not supported by substantial evidence in the record. (Doc. No. 5, Pages 1-4). In response, Defendant argues that the ALJ properly evaluated Plaintiff's RFC and Plaintiff's subjective complaints and also properly relied upon the VE's response to a properly-phrased hypothetical. (Doc. No. 6, Pages 2-9). Because the ALJ erred in assessing Plaintiff's RFC, this Court will only address Plaintiff's first argument.

Prior to Step Four of the sequential analysis in a disability determination, the ALJ is required to determine a claimant's RFC. *See* 20 C.F.R. § 404.1520(a)(4)(iv). This RFC determination must be based on medical evidence that addresses the claimant's ability to function in the workplace. *See Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004). The ALJ should also consider "'all the evidence in the record' in determining the RFC, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004) (quoting *Krogmeier v. Barnhart,* 294 F.3d 1019 (8th Cir. 2002)). The plaintiff has the burden of producing documents to support his or her claimed RFC. *See Cox*, 160 F.3d at 1206; 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ, however, bears the primary responsibility for making the RFC determination and for ensuring that there is "some medical evidence" regarding the claimant's "ability to function in the workplace" that supports its RFC determination. *Lauer v. Apfel,* 245 F.3d 700, 703-04 (8th Cir. 2001). Furthermore, this Court is required to affirm the ALJ's RFC determination if that determination is supported by substantial evidence on the record as a whole. *See McKinney v. Apfel,* 228 F.3d 860, 862 (8th Cir. 2000).

In the present action, there are only a few medical records related to Plaintiff's physical impairments that are included in the transcript and that are dated after Plaintiff's alleged onset date of July 16, 2005.[3]  (Tr. 75-100).  On July 27, 2005, Plaintiff was examined by Dr. J.T. Dehaan, M.D. for her lower back pain.  (Tr. 86, 91-95, 97).  After that examination, Dr. Dehaan diagnosed her with a "[p]ossible herniated disc."  *See id.*  Dr. Dehaan also stated, "[d]ue to funding she cannot get an MRI scan, so we're going to start her on an anti-inflammatory program, and I outlined some exercises she can do.  I will see her back again as needed."  *See id.*  On July 27, 2005, Dr. Dehaan also ordered an X-ray of Plaintiff's lumbar spine, which resulted in the following findings: "AP/lateral lumbar - Mild degenerative changes to the lower lumbar levels, but alignment is satisfactory and no acute injuries are noted."  (Tr. 92).

On January 12, 2006, Plaintiff underwent an MRI of her lumbar spine, and she was diagnosed with "Mild Degenerative Disc Disease of the Lumbar Spine."  (Tr. 80-85, 88-90).  On January 18, 2006, Plaintiff was examined during a follow-up appointment with Dr. Dehaan for her lower back problems.  (Tr. 86).  During this appointment, Dr. Dehaan evaluated Plaintiff's results from her MRI. *See id.*  In this report, he made the following finding: "[a]t L4-5 there may actually have some *nerve root irritation* because her symptoms are more pointed towards the discs at that level."  *See id.* (emphasis added).

On January 29, 2006, Dr. Dehaan completed a "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)."  (Tr. 98-100).  In this report, Dr. Dehaan found that the maximum amount Plaintiff could occasionally lift and carry was less than ten pounds and the maximum amount she could frequently lift and carry was less than ten pounds.  (Tr. 98).  Dr. Dehaan found that

---

[3] Some mental health records are also included in the transcript.  (Tr. 101-126).

Plaintiff only had the ability to stand and walk (with normal breaks) for two hours out of an eight-hour day and the ability to sit (with normal breaks) for about four hours out of an eight-hour day. *See id.* Dr. Dehaan found that Plaintiff could only sit for fifteen to twenty minutes before she needed to change positions and could only stand for five to ten minutes before she needed to change positions. *See id.*

After reviewing the record, this Court finds that the ALJ's RFC determination is not supported by substantial evidence. In his RFC determination, the ALJ found that Plaintiff had far less severe limitations than those found by Dr. Dehaan. (Tr. 13-14, Finding 5). The only treatment records included in the transcript that relate to Plaintiff's physical impairments are from Dr. Dehaan. (Tr.75-100). There are no consultative reports or other examinations included in the record. *See id.* The records provided by Dr. Dehaan do not indicate that Plaintiff retains the ability to perform a wide range of light work as found by the ALJ. Dr. Dehaan's records from July 27, 2005 appear to be the initial diagnostic findings. (Tr. 86, 91-95, 97). Dr. Dehaan was unsure as to Plaintiff's impairments, and he diagnosed her with a "[p]ossible herniated disc." (Tr. 86). On January 18, 2006, Dr. Dehaan continued his review of Plaintiff's symptoms and other limitations and found that she may suffer from "nerve root irritation" which could explain her symptoms and pain. (Tr. 86). On January 29, 2006, Dr. Dehaan then determined, based upon these findings, that Plaintiff suffered from severe limitations on her ability to perform SGA and would be unable to perform a wide range of light work. (98-100).

Apart from the treatment records from Dr. Dehaan, the transcript only contains an X-ray report of Plaintiff's lumbar spine from July of 2005 and an MRI report of her lumbar spine from January of 2006. (Tr. 80-85, 88-90, 92). The ALJ relied upon these X-ray and MRI reports in his

disability determination. (Tr. 15). These result indicate that Plaintiff was not disabled and was able to perform a wide range of light work. In fact, they indicate that Plaintiff only suffered from "mild degenerative changes to the lower lumbar levels" and "mild degenerative disc disease of the lumbar spine." (Tr. 15). These results, however, do not provide substantial evidence supporting the ALJ's RFC determination. While Plaintiff's X-ray and MRI results *appear* to indicate that Plaintiff is not disabled, these results do not support such a finding. In fact, *after reviewing Plaintiff's MRI reports from January of 2006*, Dr. Dehaan still determined that Plaintiff was suffering from severe and disabling back pain (Tr. 98-100), which could possibly be due to a "nerve root irritation." (Tr. 86).

On remand, the ALJ should further evaluate Plaintiff's back pain and determine whether she is disabled due to her back pain or due to a nerve root irritation. Furthermore, if necessary, the ALJ should order consultative examinations to determine the extent of Plaintiff's back pain.

**4. Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is not supported by substantial evidence and should be reversed and remanded. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 21st day of July, 2008.**

/s/  Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE